Fowler I appreciate you helping me out Ms. Clay. I'm glad you did it. I'm glad you said it. I just moved down my docket. I'm trying to get the morning over with. Alright Mr. English, I mean Mr. Sabrin, representing Mr. English. I feel like I'm playing to tell the truth. I am the real Philip Sabrin. Good. Good morning, Your Honors. My name is Philip Sabrin, and I represent Jose Hernandez in this appeal. Mr. Hernandez was a Gainesville police officer who was sued for excessive force under the Fourth Amendment against an individual where there is no question that he had brandished a weapon. Here's the problem I have. I watched the video. Yes, Your Honor. I don't see where this man made even what the district court said an almost imperceptible move. As far as I can tell, he's not armed. I know he was armed previously, but it does not appear he's armed, and in fact he wasn't. And it's true, he did not obey the officer's commands. And I would tell any citizen that if an officer is barking commands at you, please comply with the commands. He didn't do that, but he didn't move. I mean, I've watched that video multiple times. He just didn't move at all, and it just seems to me that's a jury issue. I know the officers said that they testified that they thought he reached, you know, that he made a movement. What am I missing? All right. I think a few things, Your Honor. I don't necessarily disagree with the ability of a court after the fact to freeze frame a video and say, was this justified or not? The officers, of course, on the scene did not have that ability to do so. I know. And what I would say, Your Honor, with due respect, is that he was armed, or at least from the officer's perspective, which is clearly what the standard requires, there was a reasonable, even if mistaken, belief that he was a threat. Now, what Hang on a second, because I think, Chief Judge Pryor, I want to make sure that I understand your response. Yes, Your Honor. The question here is not what is the jury going to ultimately decide, but whether the jury should be the one that has to decide it. Yes. Okay? So this Court has said that if the evidence is clear, and thus no reasonable jury would differ, then the district judge should decide it, for instance, in your favor. Yes. But if the evidence is not clear, and there is a reasonable jury, theoretical, that could decide it the other way, then isn't it the district judge's job to let the jury make the call? Your Honor, my response to that is that the standard to be applied is very clear. And the standard is whether, from the perspective of the officer on the scene I got your going to the standard. Okay. But the question is, who does the applying? The jury or the judge in a summary judgment motion? The judge decides that. It's a legal question. I mean, Saucere v. Katz and a litany of other cases. If the evidence is clear. If the evidence is not … If there's no genuine issue of material fact. Correct. Whether there's a genuine issue of material fact. But the standard, again, I know the Court's very familiar with it, but the standard is whether, from the perspective of the officer on the scene, whether there was a reasonable, albeit mistaken, even if mistaken, and of course that's for the question of the Fourth Amendment substantive violation, but then we get to the qualified immunity. And there's many cases that say that, particularly in the excessive force context, you cannot decide this at a high level of generality. And beyond that, they say that it has to be far beyond, far beyond the hazy border of reasonable and excessive force. And what the officers knew going into the situation is that this individual had fired a gun, had reloaded the gun, had not … was still in the same place in a public area, a local hospital or medical center was in lockdown, the threat was ongoing, and there was nothing in what the Mr. Inglis did or didn't do … Here's the problem. We have previously held, it was clearly established that the use of Fourth Amendment right to be free from excessive force. Correct. And I would … I'm sorry, you can't use deadly force where there's no immediate threat to the officer and no threat to others. But he was standing there unarmed, albeit not obeying their commands to show his hands, but he didn't move. How is he posing a threat? The question is, and again, I feel like I'm repeating myself, Your Honor, but I want to make it very clear that the question is not whether he was in fact a threat, but whether they reasonably perceived he was a threat. And the reason that we say that … And a jury can look at this and watch a video and infer no. You say reasonably perceived. Yes. The reasonably perceived part is what the jury has to decide, whether it was reasonable for the officers to perceive him as a threat. Would you agree with that? I would not. I would not on these facts, Your Honor. On some facts, yes. Didn't he have his hands in his pockets? No. He had his hands by his side and he was turned this way. And what were the officers saying to him? The officers were saying, show me your hands, raise your hands, let me see your hands. The movement, let's say you can see the movement. I watch the videos, too, and it's heartbreaking. It's heartbreaking for the officers, it's heartbreaking for the victim, it's heartbreaking for everybody. Yes. What movement did you see? Give me that. I have the same perception that you do, but the question is whether … Didn't see any. All right. But let's suppose, let's suppose that I think the officer said, I saw an almost imperceivable movement or saw a movement where his hand or arm was going up. Yes. You think that's correct? All right. If they are telling him to, and again, this is horrible, but if they're telling him to show his hands and he's moving his hands up, if he complies with them, which direction would his hands go? It was a turn, Your Honor. I might have mistaken about the hand coming up. It was a turn. And after 20 seconds, I mean, I could be theatrical and come and watch for 20 seconds, but that is plenty of time for someone to verbally say, I don't have a gun, I'm not armed, I'm not any … But they go into the situation knowing that he has fired the gun, he has brandished a weapon. You can't ignore that. The problem that I have is … Well, Officer Hernandez also testified that he heard the radio dispatch that said Mr. English had placed the gun in the bag at his feet. Doesn't that also go into the reasonableness assessment? That … What are they supposed to do? Ask the dispatcher, who told you that? Are you sure? Does he have another gun? I mean, what we're doing, Your Honor, is that I would respectfully submit what we're doing right now is second-guessing based on what we know after the fact as opposed to at the scene. And let me also, I just have less … You're relying on the fact that he had a gun at some point. But a gun is in the bag. I had a gun not just at some point, but he was … And there's no indication he's reaching for another gun. Oh, absolutely. Absolutely. He's … It's not as though he had a gun at a prior time, and now he's eating lunch somewhere, and they come in and say, show us your hands, and there's no indication. This is the same fluid time period. So when the district court says he's unarmed and he's not resisting, we could disagree with that completely. He did have a weapon at his disposal. He could have very easily grabbed it if it was a gun, if it was in the bag, if it was by his side. And, of course, we're not even talking about the qualified immunity, and there is no case other than applying that you cannot shoot someone who is not resisting. I would say that if you have fired a gun on a public street, you pointed it at … What we said in Perez, mere presence of a gun or other weapon is not enough to warrant the exercise of deadly force and shield an officer from suit. That's right. But in none of those cases did you have the situation here where he had fired the gun and he had not complied. Now, yes, if you just have — if it's the mere possession, this was not mere possession, Your Honor. This was a volatile situation where there was the continuing threat, and it's the reasonable perception of that. And then once we get to qualified immunity, what you have in those cases is someone who has handcuffs on their back or things of that sort. You've gone over. Why don't we hear from Ms. Clay. All right. Thank you, Your Honor. You represent Fowler? Yes, Your Honor. All right. I've got things straight now. May it please the Court, my name is Frances Clay, and I do represent Defendant Fowler. I only reserve two minutes because the arguments that apply to Officer Hernandez also apply to which the Court is obligated to make, is not based solely on that video evidence. No, it's based on the evidence viewed in the light most favorable to the nonmoving. Exactly. But the transcript of — We've got the officer's testimony, and then I've got videos. When I watch the videos and they conflict, they don't really support the officer's testimony. I'm talking about the transcript of the dispatch calls, Your Honor. The transcript of the dispatch calls says that this person is pointing a gun at traffic. Yeah. He's pointing it at himself. Well, he wasn't pointing it at the officers. He didn't point it at the officers when they got there, but this was like one minute afterwards. They don't know if he still has the gun at his waistband, if he has another weapon at his waistband. It's not the case where there's a gun just lying next to somebody and they haven't used it, and the police shoot them. This is a case where the man has fired the gun. The officers know that he's fired the gun. But the question is, is there an immediate threat to the officers and others? He was an immediate threat because he had his hand concealed, and when he made the movement, it wasn't that he was lifting his hand. His hand was moving towards his waistband, is what they said. All of the officers reasonably thought it was an immediate threat. I mean, I watched the video. I don't see it. Well, with all due respect, I think in person it's more obvious than on the video. And there were other witnesses — Oh, that's a good jury argument. But there were other witnesses who also said they saw the movement, not just the officers. There was a declaration from two other witnesses who said they saw the movement as well, and they thought he was reaching for a gun. So I think it was reasonable. They ought to be put on the stand. Thank you, Your Honor. Mr. Kastorf. Thank you, Your Honors, and may it please the Court. I'm Kurt Kastorf, and I represent Adam's mother in this case. A jury in this case could permissibly conclude that the defendants at the time they shot Adam first knew that Adam was not holding a gun because they had just seen him stand up and could see his hands when he stood up, and second, could see that he was standing still at the time they discharged their weapons under clearly established law, the use of deadly force in precisely that circumstance where a defendant is not currently brandishing a weapon, not currently resisting, and not currently fleeing. Did you take issue with the judge's conclusion that there was some sort of movement? I will be honest. I watched the video many times, including another half dozen times last night, and I don't see any movement at all. When I stare really close at the screen about five times, I wonder if there's a little artifact at a second where maybe his shoulder is moving a bit. And so, but I think that, respectfully, I think the defendant's brief tries to frame the fact that there's at least the defendant, that the district court found some barely perceptible movement as supporting the claim there was movement. I think the district court's point, what the district court was attempting to say, is that if there was any movement on Mr. English's body, it was an almost imperceptible movement. Not that it's very difficult to perceive, but that the movement itself, if it occurred, was nearly imperceptible. And that stands in very stark contrast to the testimony of the officers, who conflict each other, frankly. Hernandez claimed that English quickly moved his arm down. I think he moved his right arm down and away from them, and then Fowler testified that he made a quick movement with his hands toward the officers. And both of these officers testified that it was a quick and dramatic movement, and that is simply not supported by the video, regardless of what the district court found. And a jury could permissibly conclude, watching the video, or in conjunction with the video, noting that the video cannot possibly be framed as consistent with the officer's testimony, they could choose to not leave that testimony. To respond to just a couple other points first, I think that Counselor Hernandez said that this court shouldn't have given a freeze-frame review of the video. Respectfully, I think that watching the video in real time doesn't show any perceptible movement, and if anything, the type of freeze-frame analysis required to find some sort of is actually the type of thing that the Court should not engage in. And absent that, absent any questions from the Court, I'm happy to cede the remainder of my time. Thank you, Your Honors. Thank you. Reverend, you've stayed four minutes. Thank you. With due respect, Your Honor, I believe that the phrase is usually used when you're disagreeing, right? With all respect, Your Honor. No, but in all seriousness, because this is a very serious case. My concern is that we're doing exactly what the Supreme Court in this Court has said we shouldn't do, which is to second-guess officers based on what the actual evidence may have shown afterwards. You know, I've been on the Court long enough to remember a case called, I think it was Scott v. Harris, where our Court denied qualified immunity, but then there was a video that told a completely different story from what the complaint alleged, and the Supreme Court of the United States said, who am I supposed to believe? The allegations of the complaint are my lying eyes, and videos can help officers, as they did there, or they can hurt. We live in an era where there are body cams, there are dash cams, there are iPhones and other smartphones all over the place with citizens holding them and recording events, and very often, I've seen it in cases, this has been to the benefit of the officers. This is not one of those cases. Judge, I'm very familiar with Scott v. Harris. That was my case, and I did argue it in the Supreme Court, and I think that the relevance of that case is that it was an ongoing threat.  But it also, if you look at the video, it told a completely different story from what the complaint alleged, right? But the point that I want to make, I guess that brings up two points. One is that the difference between the Eleventh Circuit's decision in Scott and the Supreme Court's was focused on whether or not there was anyone in the suspect's path at the time when the deadly force was used. And what the Supreme Court said very clearly on that ground is that it's the ongoing risk and that you can't just look at it in isolation at the time of the force that was used. By analogy here, this was an ongoing, fluid situation. It was not as though his demeanor or even his position had changed. I think you need to look at it from that perspective. The other thing in terms of looking at the video afterwards, if we have to splice it to say was this reasonable or not, we are now second-guessing the officer's perspective. And Saucere v. Katz says very clearly, if an officer reasonably but mistakenly believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than was in fact needed. I hate to keep beating a horse, particularly since I have horses. But I've had cases on the district court level where I've had videotape where officers have shot individuals and I have ruled the evidence was clear. No reasonable jury could differ. This person was making an aggressive move. Officers had to take deadly force action. Okay? So I granted summary judgment. In this particular case, you keep going back to reasonably perceived. The officer is reasonably perceived. If an officer did not reasonably perceive, let's say, for instance, there was 40,000 witnesses and 16 cameras pointed at the victim and the officer walks up and shoots the victim in the head. And then the officer says, well, I thought he was about to pull a gun that was in his pocket. I don't think there's anybody that would say that was a reasonable perception. And I don't think that any court would uphold a summary judgment opinion that said that the plaintiff's claims were gone because of that. I'm over my time, but may I? Do you agree with me or not? I'm trying to carry it out there, but I think it's not that I think your clients don't have arguments that need to be decided and they need to be heard and the law needs to be applied to this case. I just don't think a judge can take the place of a jury when there is disputed evidence. And, Your Honor, what I would say is under your hypothetical, that may very well be the case in the context of here where we have what the officers knew going in, that he had branched a gun, that he had reloaded it, that he was not complying. And I think in some circumstances, not complying where you had a gun, you had fired it, and you're not even communicating with the officers, that that could be viewed as an ongoing threat. And as far as the use of deadly force is concerned, it would take a split second. You're standing like this to whip out a gun. And that is, I think, the problem with looking at the video after the fact where it doesn't clearly show something. Because we all know if you have four cameras on a street corner and you have four people, they're going to say things that their perception is going to be different. So what we're looking at is the officer's perception. All we're saying is that if it was mistaken, it was reasonable, and then we have the qualified immunity analysis. I really appreciate the candor of the Court. I hope I have made my position clear, and I look forward to hearing the ruling. Thank you. We're in recess until tomorrow.